# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISAAC FLOYD, | : | CIVIL ACTION |
|     Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES L. GRACE, *et al.*, | : | |
|     Respondent | : | NO. 06-2324 |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

CAROL SANDRA MORE WELLS                                               March 9, 2010
UNITED STATES MAGISTRATE JUDGE

      Presently before the court is a Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. Isaac Floyd ("Petitioner"), currently incarcerated at the State Correctional Institute at Huntingdon, Pennsylvania, seeks habeas relief based on alleged trial court errors, sentencing errors, violation of his Eighth Amendment rights, and ineffective assistance of counsel. On June 19, 2006, the Honorable Bruce W. Kauffman referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). On December 13, 2006, the undersigned filed a Report and Recommendation ("Report") concluding that Petitioner's habeas claims should be dismissed and denied without an evidentiary hearing.

      Between December 29, 2006 and April 21, 2008, Petitioner filed six *pro se* documents which challenged this court's recommended disposition of four of his nine claims. On May 7, 2008, Judge Kauffman appointed Michael J. Kelly, Esquire to represent Petitioner. Despite having counsel, on June 15, 2009, Petitioner filed another *pro se* document which sought to supplement his prior objections. On July 14, 2009, this case was reassigned from Judge Kauffman to the Honorable Berle M. Schiller. Counsel filed a Memorandum of Law ("Counseled Mem."), on July 20, 2009,

addressing two of Petitioner's claims. On August 4, 2009, Judge Schiller referred this case to the undersigned for preparation of a Supplemental Report and Recommendation. Thereafter, on December 3, 2009, Petitioner filed a *pro se* request to have this case stayed and placed in civil suspense while he pursued a third round of state post-conviction relief. On December 11, 2009, the Commonwealth filed a response to the Counseled Mem. Finally, on January 14, 2010, counsel filed a memorandum of law concerning Petitioner's *pro se* request to stay this case.

The initial Report summarizes the factual and state procedural background of this case, which will not be repeated herein.[1] In addition, the court will not repeat herein the discussion of exhaustion, procedural default, the AEDPA[2] standard of review or the relevant constitutional principles involved in each of Petitioner's claims; the court incorporates herein, by reference, the content of its prior Report. *See* Report at 4-6, 8-10, 11-12, 15, 21-23. This court will address only the *pro se* and counseled objections to the Report. No objections were made to the court's recommended dispositions of Grounds Three, Six, Seven and Nine, hence, the court expects that Judge Schiller will adopt recommendations; they will not be addressed herein. Petitioner has filed *pro se* objections to the court's proposed dispositions of Grounds One, Two, Four and Eight.[3]

---

[1] In preparing the Report, the court reviewed Petitioner's Habeas Corpus Petition, his Memorandum of Law in Support of his Habeas Petition, the Commonwealth's Response, inclusive of all exhibits thereto, and the state court record.

[2] AEDPA refers to the Antiterrorism and Effective Death Penalty Act of 1996. AEDPA amended several portions of the habeas corpus statute, including adding a deferential standard of review for constitutional claims adjudicated in the state courts. *See* 28 U.S.C. § 2254(d)(1)-(2).

[3] Petitioner also objects to the court's summary of the evidence on page 2 of the Report. Petitioner's Written Objections to Magistrates [sic] Report & Recommendation Pursuant to F.R. Civ. Proc. 72(b) ("Doc. No. 24") at 2-4. Petitioner specifically objects to the court stating that he shot and wounded the three victims in this case. *Id.* at 2. This objection is without merit. On page two of the Report, the court indicated that the evidentiary summary was taken directly from the Superior Court's summary of the evidence on direct appeal. Further, even Petitioner's counsel notes that two of the victims, Torrey Thompson and Anthony Purnell, identified Petitioner as being the person who shot and wounded them. Counseled Mem. at 8. Notably, Mr. Purnell knew Petitioner prior to the shooting. (N.T. 2/18/00 at 209, 232-33). Petitioner also objects to the court's alleged misunderstanding of the import of Darnell Gay's affidavit. Doc. No. 24 at 4-5. Finally, Petitioner objects to the court's failure to address alleged constitutional violations that allegedly occurred took place during his arrest, which he believes pertain to the question of his actual innocence. *Id.* at 5. These assertions will be addressed *infra* Section IV.

Counsel for Petitioner has filed objections to the recommended dispositions of Grounds Five and Eight. They will be addressed *seriatim*.

I.  **Ground One - Ineffective Assistance of Counsel for Failing to Object to the Trial Court's Instruction Concerning *Crimen Falsi* Convictions**

Petitioner claims that trial counsel rendered ineffective assistance by failing to object to the trial court's instruction that the jury could use of evidence of *crimen falsi* convictions of the testifying victims, Torrey Thompson and Anthony Purnell, only as a basis to evaluate each witness's truthfulness. Report at 11; Memorandum of Law in Support of Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Pet'r's Mem.") at 2-6. Petitioner maintains that their criminal history, particularly Mr. Thompson's, were so extensive that the jury should have been instructed to consider whether the victims were "morally reprehensible," "feral," and "dangerous." Pet'r's Mem. at 3-4.

On PCRA[4] appeal, the Pennsylvania Superior Court found the trial court's *crimen falsi* instruction to be correct under Pennsylvania law, hence, trial counsel could not have been ineffective for failing to object thereto. Report at 12. This court noted that it was bound by the Superior Court's conclusion that the *crimen falsi* instruction was correct under state law. Report at 12 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). The court further explained that the Superior Court's conclusion that trial counsel could not be ineffective for failing to raise a meritless claim was not contrary to neither an unreasonable application of Supreme Court precedent, hence, Petitioner could not obtain habeas relief.[5] Report at 12-13.

---

[4]PCRA refers to Pennsylvania's Post Conviction Relief Act, which is codified at 42 Pa. Cons. Stat. Ann. §§ 9541-46.

[5]The court also noted that Petitioner's claim implicated no Superior Court findings of fact, thus, 28 U.S.C. § 2254(d)(2) did not provide an alternate basis for habeas relief. Report at 13 n.15. Petitioner does not challenge that conclusion, hence, the recommendation is sound in that regard.

Petitioner's *pro se* objection asserts that the court erred in deferring to the Superior Court's adjudication of his claim because the limiting instruction, even if correct under Pennsylvania law, violates federal law. *See* Petitioner's Written Objections to Magistrates [sic] Report & Recommendation Pursuant to F.R. Civ. Proc. 72(b) ("Doc. No. 24") at 6. Petitioner cites *United States v. Abel*, 469 U.S. 45 (1984); *Davis v. Alaska*, 415 U.S. 308 (1974); *Chambers v. Mississippi*, 410 U.S. 284 (1973); and *Holloway v. Horn*, 355 F.3d 707 (3d Cir. 2004) to support this proposition. However, as explained below, all of these cases are inapposite to Petitioner's contentions of error.

*Abel* is inapplicable; in it the Supreme Court concluded that impeachment for bias[6] survived enactment of the Federal Rules of Evidence. *Abel*, 469 U.S. at 50. The Federal Rules of Evidence do not apply to state prosecutions; moreover, Petitioner does not claim that he was prevented from showing that Messrs. Thompson and Purnell were biased against him. *Davis* does not support Petitioner's assertion either. In that case, the Supreme Court concluded that, despite the state's interest in preserving the confidentiality of juvenile adjudications of delinquency, the Confrontation Clause required that the defendant be permitted to use a prosecution witness' juvenile adjudication of delinquency to impeach that witness' truthfulness. *Davis*, 415 U.S. at 309, 316-18. By contrast, Petitioner herein was allowed to use the witnesses' prior convictions as a basis to challenge their truthfulness. Next, *Chambers* involved the Supreme Court's conclusions that Mississippi's voucher rule[7] violated the Confrontation Clause and that Mississippi's failure to allow Chambers to present another person's hearsay admissions against penal interest at Chambers' trial violated due process. *Chambers*, 410 U.S. at 295-303. Petitioner, on the other hand, was not barred from cross-examining

---

[6]The Court explained that bias is used "to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." *Abel*, 469 U.S. at 52.

[7]Mississippi's voucher rule barred a party from cross-examining his own witness. *Chambers*, 410 U.S. at 295-96.

his own witness or from introducing any exculpatory hearsay admissions against penal interest. Finally, *Holloway* does not support Petitioner's federal claim because, in that case, the Third Circuit concluded that Holloway's rights under *Batson v. Kentucky*, 476 U.S. 79 (1986), were violated by the prosecutor's exercise of peremptory challenges to strike African-American venire persons from Holloway's petit jury.[8] *Holloway*, 355 F.3d at 722-25. Petitioner raised no *Batson* claim herein. Accordingly, Petitioner's *pro se* objection to the court's recommended disposition of Ground One is baseless and should be denied.

## II. Ground Two - Ineffective Assistance of Counsel for Failing to Object to the Trial Court's Instruction Concerning Equal but Countervailing Inferences

Petitioner claims that trial counsel rendered ineffective assistance by failing to object to the trial court's instruction that, if the facts support either of two inferences, one consistent with a finding of guilt and the other with a finding of innocence, the jury must find the defendant not guilty only where the support for either of the two inferences is exactly equal. Report at 13. On PCRA appeal, Petitioner relied upon federal authority (*United States v. Isaac*, 134 F.3d 199, 202 (3d Cir. 1996; *United States v. Khan*, 821 F.2d 90 (2d Cir. 1987)) to argue that the "two inferences" instruction was unconstitutional. Report at 13-14. The Superior Court resolved this claim by finding that the "two inferences" instruction was correct based upon a Pennsylvania Supreme Court decision (*Commonwealth v. Martin*, 387 A.2d 835 (Pa. 1978)), which contravened *Isaac* and *Khan*. Report at 13-14. The Superior Court further noted that *Isaac* and *Khan* ultimately held that the "two inference" charge was not constitutionally deficient *per se* and did not constitute reversible error, because the respective trial courts had thoroughly and accurately instructed the juries on the

---

[8]*Batson* holds that the Fourteenth Amendment's Equal Protection Clause prohibits a prosecutor from using a peremptory challenge to strike a prospective juror solely on account of race. *See Holloway*, 355 F.3d at 719 (citing *Batson*, 476 U.S. at 88).

prosecution's burden of proof. Report at 14. Accordingly, the Superior Court concluded that Petitioner failed to substantiate his ineffective assistance of counsel claim. *Id.*

This court noted that the Superior Court's adjudication of the ineffective assistance claim could be upheld if the Superior Court's conclusion that the "two inference" jury charge was proper was not contrary to nor an unreasonable application of U.S. Supreme Court precedent. Report at 14. The court found that the Superior Court's conclusion was not contrary to nor an unreasonable application of U.S. Supreme Court precedent because the Superior Court decision did not directly contravene any U.S. Supreme Court precedent, and there was no U.S. Supreme Court case which had a materially indistinguishable set of facts and yielded a different result. Report at 15. The state court then explained that the trial court's charge, as a whole, properly instructed the jury on the Commonwealth's constitutional burden to prove guilt beyond a reasonable doubt; hence, there was no reasonable likelihood that the jury would have applied the challenged instruction in an unconstitutional manner. *Id.* at 16. The Superior Court's resolution of Petitioner's claim, thus, was a reasonable application of Supreme Court precedent and he could not obtain habeas relief.[9]

Petitioner reasons that, since *Isaac* was based on the application of U.S. Supreme Court precedent and post-dates *Martin*, this court should have overturned the Superior Court's adjudication of his claim. Doc. No. 24 at 6-7. This objection lacks merit. In the Report, this court addressed the due process requirements implicated by the "two inference" jury instruction. *See* Report at 15. The court also explained why the Superior Court's application of those principles to Petitioner's claim was not contrary to nor an unreasonable application of U.S. Supreme Court precedent. *See id.* at 15-16. Petitioner's objection fails to acknowledge this aspect of the Report, let alone present a basis

---

[9]The court also noted that Petitioner's claim implicated no Superior Court findings of fact, thus, 28 U.S.C. § 2254(d)(2) did not provide an alternate basis for habeas relief. Report at 16 n.16. Petitioner does not challenge that conclusion, hence, it may be adopted on this point.

to re-consider the court's sound analysis. Accordingly, Petitioner's *pro se* objection to the court's recommended disposition of Ground Two should be denied.

**III.     Ground Four - Eight Amendment Challenge to Petitioner's Three Life Sentences**

Petitioner alleges that the imposition of his sentence pursuant to Pennsylvania's three strikes law, 42 Pa. Cons. Stat. Ann. § 9714(a)(2), constitutes "cruel and unusual punishment" prohibited by the Eighth Amendment. Report at 20-21. On PCRA appeal, the Superior Court concluded that the trial court's sentencing decision, based upon the evidence before it and the relevant pre-sentence investigation report, did not violate the Eight Amendment. Report at 21.

This court reviewed the Supreme Court's decisions in *Lockyer v. Andrade*, 538 U.S. 63 (2003) and *Ewing v. California*, 538 U.S. 11 (2003), and its other decisions[10] which concern the Eight Amendment's "gross disproportionality principle" applicable to noncapital sentences. Report at 21-23. As was explained, the Supreme Court itself has conceded that its cases have not precisely clarified the scope of this principle. *Id.* at 21. This court concluded that the Superior Court's adjudication of Petitioner's claim was not contrary to Supreme Court precedent because his:

> sentence, availability of parole, severity of his underlying offense, and his level of recidivism have some similarity to the factors in *Harmelin*, *Solem* and *Rummel*. However, his factors are not materially indistinguishable from those of the defendants in *Harmelin*, *Solem* and *Rummel*. Thus, as in *Lockyer*, it cannot be said that the Superior Court's adjudication of Petitioner's claim was contrary to Supreme Court precedent.

Report at 23. The court also explained that the Superior Court's adjudication of his claim was not an unreasonable application of Supreme Court precedent, because the "gross disproportionality principle" was admittedly imprecise and Petitioner's crimes were much more severe than Rummel's

---
[10]The other decisions are *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983); and *Rummel v. Estelle*, 445 U.S. 263 (1980).

or Andrade's. Report at 24.

Petitioner challenges his sentence on the grounds that parole is not available to him, his victims did not receive life-threatening wounds and he is not a recidivist offender. Doc. No. 24 at 8. Although it is true that parole is not available to Petitioner and his victims did not die from wounds he inflicted, the court finds that the victim's wounds were life-threatening; the trial court expressed surprise that the shooting victims survived. (N.T. 2/23/00 at 18). The court also does not agree that Petitioner is not repeat offender. At the time of his sentencing and re-sentencing, the trial court reviewed an extensive and violent, criminal record. (N.T. 2/23/00 at 9-12, 18; N.T. 6/14/00 at 9-10). In any event, Petitioner fails to understand that the reason he cannot prevail under the AEDPA standard is because the Supreme Court's somewhat ambiguous precedent makes it practically impossible to find that the Superior Court's adjudication of his claim was contrary to or unreasonable application of that precedent. *See* Report at 23-24. Because Petitioner's objection fails to consider this, mis-characterizes his victim's injuries, and misapprehends the extent of his own prior criminal record, the court finds it lacks merit. Accordingly, Petitioner's *pro se* objection to the court's recommended disposition of Ground Four should be denied.

### IV. Ground Five - Ineffective Assistance of Counsel for Failing to Call Two Eyewitnesses to Testify at Trial

Petitioner asserts that trial counsel was ineffective for failing to call Gary Smith and John Blow to testify at trial. Pet'r's Mem. at 18. He maintains that these witnesses were available at trial and were "willing to testify to the fact that they were present when this crime took place and that [Petitioner] had no involvement." *Id.* Before the court issued its Report, it review the affidavits from Messrs. Smith and Blow that Petitioner supplied.

Petitioner's eyewitness claim was deemed procedurally defaulted. Report at 7. Petitioner

filed no *pro se* objection concerning this claim, but counsel did. Counseled Mem. at 24-33. While Petitioner's counsel concedes that his claim is procedurally defaulted and lacks adequate cause and prejudice to excuse the default, *id.* at 25, he argues that the content of the affidavits of Messrs. Smith and Blow, Darnell Gay, and Kent Derry, demonstrate actual innocence sufficient to excuse the procedural default. More recently, Petitioner, acting *pro se*, has submitted the affidavit of Ali Shabazz, the third victim, who now states that he has known Petitioner since the 1980's, Petitioner was at the scene of the crime, but did not shoot him or the other two victims. *See* Pet'r's Request for Stay and Placement in Civil Suspense ("Doc. No. 46"), Affidavit of Ali Shabazz. Petitioner further asserts that constitutional violations that took place during the probable cause determination and his trial influence the question of his actual innocence. *See* Doc. No. 24 at 5.

The court has already addressed the affidavits of Messrs. Smith, Blow and Gay. *See* Report at 8. In the court's view the affidavits of Messrs. Smith and Blow do not constitute "new" evidence, warranting consideration. They were present at trial, willing to testify that Petitioner was not involved in the shootings. *See* Report at 8; *Goldblum v. Klem*, 510 F.3d 204, 226 n.14 (3d Cir. 2007) (explaining that evidence is not "new" for purposes of the actual innocence inquiry if the evidence was available at trial but the petitioner or his attorney chose not to present it). Moreover, as this court explained, Mr. Gay's affidavit was not exculpatory; inasmuch as he did not witness the shooting. *See id.* Petitioner suggests that this conclusion misapprehends "the exculpatory nature of [the affidavit]." Doc. No. 24 at 4. However, it is Petitioner who misunderstands the nature of the actual innocence standard.

To prove actual innocense, it is not adequate that Mr. Gay's affidavit *might* impeach whether one victim, Torrey Thompson, confused Mr. Gay for Petitioner several days after the shooting.

Instead, Petitioner must present new, reliable affirmative evidence that demonstrates he did not shoot the victims. Mr. Gay's affidavit fails to exonerate him. Moreover, Mr. Gay's affidavit does not effectively impeach Mr. Thompson's testimony that he saw Petitioner several days after the shooting. At trial, Mr. Thompson testified that, some time after the shooting, he saw Petitioner on the street, accompanied by other people. (N.T. 2/18/00 at 134). He contacted the police, who saw and questioned Petitioner and his associates. *Id.* at 173. Mr. Thompson did not approach the police at the time, but later went to the police district. *Id.* at 173-74. He was told by the police at the district that they had released Petitioner, because Mr. Thompson had failed to identify Petitioner on the street. *Id.* at 174-76. Based on this record, which Petitioner and Mr. Gay ignore, it is likely that Mr. Gay was one of the persons Mr. Thompson saw the police question on the street, with Petitioner.[11]

On April 21, 2008, the court received an affidavit from Kent Derry. *See* Petitioner's Request for Permission to File Supplement to his Objections to the Magistrates [sic] Report & Recommendation ("Doc. No. 29"), Affidavit of Kent Derry. Mr. Derry states that he witnessed the shooting, thereafter drove Torrey Thompson to the hospital, had known Petitioner for years, knows that Petitioner was not responsible for the shooting, and only recently learned that Petitioner was incarcerated for the shooting. *Id.*

Messrs. Shabazz and Derry appear to provide new evidence because, unlike Messrs. Smith and Blow, they were not available at trial. Indeed, Mr. Shabazz was uncooperative during the police investigation of the shooting and did not testify, because the police, despite extensive efforts to

---

[11]Police officers, Marcus Allen and Nelson Ghee, testified that they assisted in a police stop of Petitioner in response to Mr. Thompson's call. (N.T. 2/18/00 at 307, 320). Officer Allen testified that Petitioner was with several other males when he was stopped. *Id.* at 310. Mr. Gay implies that he was the only person the police stopped that day, however, since this is inconsistent with Mr. Thompson's testimony and Officer Allen's testimony, it is not reliable.

locate him, could not secure his presence at trial. (N.T. 2/18/00 at 252-54). Although Mr. Thompson said a friend drove him to the hospital after he was shot, he did not reveal his friend's name. (N.T. 2/18/00 at 128, 161-62). Thus, it appears that Mr. Derry was also unavailable at trial. Although Messrs Shabazz and Derry are new witnesses, the court finds their affidavits are not trustworthy or reliable, hence, they need not be weighed against the entire trial record. *See Goldblum*, 510 F.3d at 225.

Mr. Shabazz refused even to help the police investigate the crime he suffered and failed to testify at trial, hence, he is unreliable. Mr. Derry's affidavit is untrustworthy and incredible. If, in fact, Mr. Derry drove Mr. Thompson to the hospital, he was Mr. Thompson's friend, because Mr. Thompson said a friend drove him to the hospital. (N.T. 2/18/00 at 128, 161-62). Yet, Mr. Derry claims to have been unaware that his injured friend had successfully accused Petitioner of being the shooter within six months of the incident; he further claims that he first learned of Petitioner's conviction just prior to executing his affidavit on April 3, 2008. If Mr. Derry truly was Mr. Thompson's friend, he would or should have known, at the time of trial, that Mr. Thompson believed Petitioner was the shooter and was helping the police arrest and prosecute Petitioner. If Mr. Derry was indeed Mr. Thompson's friend, he would have tried to correct the error he believed Mr. Thompson was making. His affidavit fails to explain why, despite being Mr. Thompson's friend, he made no effort to prevent Mr. Thompson from accusing Petitioner.

Petitioner asserts that the constitutional violations that occurred during the probable cause determination and his trial bear on the question of his actual innocence. *See* Doc. No. 24 at 5. This assertion lacks merit. None of this information is new because it all predates the trial or transpired during the trial. Further, Petitioner asserts that his constitutional rights were violated, but he needs

to provide new, reliable evidence of his innocence, not assertions of constitutional errors.

In light of the court's conclusion that none of the matters Petitioner cites as proof of his actual innocence constitute new, reliable evidence of factual innocence, the court cannot excuse his procedural default of Ground Five. Accordingly, Petitioner's *pro se* and counseled objections to the court's recommended disposition of Ground Five should be denied.

V. **Ground Eight - Challenge to the Trial Court's Application of 42 Pa. Cons. Stat. Ann. § 9714 at Sentencing**

Petitioner claims that the trial court erred in concluding that his multiple convictions in this case constituted a "third strike" under 42 Pa. Cons. Stat. Ann § 9714; it was only under a third strike that the statute would permit the imposition of a life sentence. Pet'r's Mem. at 27. This court concluded that this claim was procedurally defaulted as well as based upon a violation of state law, and, hence, not cognizable. Report at 7 & n.11. Petitioner objects, *pro se*, to the court's proposed disposition of this claim on the grounds that: (1) the claim was based upon federal law, Doc. No. 24 at 7-8; (2) there are additional Pennsylvania Supreme and Superior Court decisions which indicate his claim has merit, Request for Court to take Judicial Notice Pursuant to Fed. Rules of Evid. Rule 201("Request for Judicial Notice") ("Doc. No. 25") at 1-2, Request for Judicial Notice ("Doc. No. 26") at 1-2, Request for Judicial Notice ("Doc. No. 27") at 1-2; (3) he is actually innocent of the sentence under *Dretke v. Haley*, 541 U.S. 386 (2004), Petitioner's Supplement to his Objections to the Magistrates [sic] Report & Recommendation ("Doc. No. 28") at 2; and (4) the claim was not procedurally defaulted under *Bell v. Cone*, ___ U.S. ___, 129 S.Ct. 1769 (2009). Petitioner's Supplement to his Objections to the Magistrates [sic] Report & Recommendations ("Doc. No. 34") at 2. Counsel concedes that the claim is procedurally defaulted and, "on its face" the claim appears to be based upon state law, hence, it is not cognizable. Counseled Mem. at 35-36. Nonetheless,

citing *Dretke*, counsel maintains that Petitioner is innocent of the "three strikes" sentence imposed upon him. Counseled Mem. at 36-42

Based on state law, this claim remains not cognizable. Prior to filing objections, Petitioner asserted that his claim asserted a violation of due process and equal protection because § 9714 is similar to a federal habitual offender statute and should be construed in the same manner. Pet'r's Mem. at 27-28. In his first set of objections, he argued that *Fiore v. White*, 531 U.S. 225 (2001) (*per curiam*) supported his contention that his claim is based on federal law. Nonetheless, as counsel concedes, Counseled Mem. at 36, on its face the claim is based upon state law inasmuch as Petitioner maintains that, under § 9714 as construed in *Commonwealth v. Shiffler*, 879 A.2d 185 (Pa. 2005), his 2000 convictions should have been a second strike, not a third strike, so that a life sentence could not be imposed. This court is not authorized to grant habeas relief based upon a determination that Petitioner was incorrectly sentenced under § 9714. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991). The fact that there is a federal "three strikes" statute is irrelevant to how Pennsylvania's courts apply their own "three strikes" statute and a federal statute cannot determine if the state court's application of its *own* statute violates due process or equal protection. Further, *Fiore* does not aid Petitioner; the issue in *Fiore* was "whether Pennsylvania can, consistently with the Federal Due Process Clause, convict Fiore for conduct that its criminal statute, as properly interpreted, does not prohibit." *Fiore*, 531 U.S. at 228. The Court concluded that Pennsylvania could not. *Id.* at 228-29. Petitioner herein does not assert that his conduct did not violate the relevant criminal statutes.

In light of the court's conclusion that Petitioner's claim is based on state law, it is unnecessary to decide whether the claim was procedurally defaulted and, if so, whether counsel's

novel assertion that Petitioner is innocent of the "three strikes" sentence imposed upon him can excuse the default.[12] Accordingly, Petitioner's *pro se* and counseled objections to the court's recommended disposition of Ground Eight should be denied.

### III. CONCLUSION

All of Petitioner's *pro se* and counseled objections lack merit. Further, reasonable jurists would not debate the court's procedural and substantive dispositions of his claims; therefore, a certificate of appealability should not issue. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, I make the following:

### RECOMMENDATION

AND NOW, this 9th day of March, 2010, for the reasons contained in the preceding supplemental report, it is hereby RECOMMENDED that petitioner's claims be DENIED AND DISMISSED, without an evidentiary hearing. Petitioner has neither demonstrated that any reasonable jurist could find this court's procedural ruling debatable, nor shown denial of any Constitutional right; hence there is no probable cause to issue a certificate of appealability.

It be so **ORDERED.**

                                           */s/ Carol Sandra Moore Wellls*
                                           CAROL SANDRA MOORE WELLS
                                           United States Magistrate Judge

---

[12] The court understands that counsel's novel assertion would serve to excuse the procedural default of Ground Eight but, inasmuch as the claim is not cognizable, whether it is defaulted and whether the default could be excused are irrelevant.